A05A0060. ALLEN v. CLERK.
(616 SE2d 213)

RUFFIN, Chief Judge.
Robin Clerk, acting on behalf of her 13-year-old minor son, N. C., sought a protective order to shield N. C. from Steven Allen, Clerk's brother and N. C.'s uncle. Following a bench trial, the trial court issued such order, and Allen appeals, challenging the sufficiency of the evidence. Allen also alleges that the trial court erred in: (1) prohibiting him from deposing or cross-examining N. C.; (2) improperly changing the basis of the protective order; and (3) enjoining his mother from "exercising her right to free speech." For reasons that follow, we reverse.

In a bench trial, the trial judge acts as the trier of fact, and we accept that court's factual findings unless clearly erroneous.[1] Viewed in this manner, the record shows that Robin Clerk filed the petition

---

[1] See *Blanton v. Duru*, 247 Ga. App. 175, 178 (5) (543 SE2d 448) (2000); *Ganny v. Ganny*, 238 Ga. App. 123, 126 (4) (518 SE2d 148) (1999).

under the Family Violence Act.[2] According to the petition, Allen "made threats to the child," "blocked [the] exit to prevent [N. C.] from leaving" and was "verbally abusive." In connection with the petition, the trial court interviewed N. C. outside the presence of the parties and found that N. C. "was terrified of the defendant." The trial court thus granted the temporary order and scheduled a show cause hearing for November 19, 2002.

Allen, who is an attorney, filed an entry of appearance and represented himself at the hearing. Robin Clerk and Officer James West, a Gwinnett County police officer who lives near the Clerks, testified regarding an alleged altercation between N. C. and his uncle, which precipitated the filing of the petition. Robin Clerk also testified that, although Allen initially helped her and her husband care for N. C., he had become increasingly possessive and controlling regarding the child. According to Robin Clerk, if anyone disagreed with Allen, the situation became volatile.

Kevin Clerk, N. C.'s father, testified regarding the deteriorating relationship between Allen and the Clerk family. Kevin also testified regarding a physical altercation between himself and Allen that started when Allen wanted to take N. C. to a football game. N. C. did not want to go with his uncle, and when Kevin informed Allen of the fact, a fight ensued between Allen and his brother-in-law.

Allen moved to dismiss the proceeding, arguing inter alia that, since he had "never been a part of or lived in the same household" with N. C., the Family Violence Act was inapplicable. The trial court apparently agreed, but rather than dismissing the petition, the court sua sponte converted it to one based upon the anti-stalking statute. The trial court acknowledged that, by changing the basis of the protective order, any subsequent violation would carry greater penalties than an order issued under the Family Violence Act. Thus, the trial court agreed to continue the hearing in order for Allen to obtain an attorney other than himself. However, before granting the continuance, the trial court informed Allen that "the condition of continuing this today will be as follows. [N. C.] ain't coming back before this court. . . . So you can tell whatever lawyer you hire that if they attempt to subpoena [N. C.] or take his deposition also, then that will be a violation of [this ruling]."

Allen obtained counsel, and the hearing recommenced on December 2, 2002. Prior to the hearing, Allen's attorney moved for a directed verdict, arguing that "there is absolutely no evidence before the court upon which it can grant an order in this case, there is no evidence. Everything that [has been] testified to is all hearsay

---

[2] See OCGA § 19-13-1 et seq.

evidence." The trial court disagreed, noting that she had "interviewed [N. C.] at length in [her] office . . . and heard from [N. C.] not just about one incident, but a continuing pattern of behavior that made [N. C.] fearful, terrified of [Allen]." Accordingly, the trial court denied the motion. Ultimately, the trial court issued a permanent protective order, finding that Allen's behavior constituted stalking.

1. On appeal, Allen asserts that given the lack of probative evidence that he had stalked N. C., the trial court erred in denying his motion for directed verdict. We agree.

"A directed verdict is proper only when no conflict exists in the evidence as to material issues, and the evidence introduced, together with all reasonable deductions therefrom, demands a certain verdict."[3] Here, the trial court concluded that the following evidence supported its ruling: (1) its ex parte interview of N. C.; (2) a letter written by N. C. to the judge and tendered, without objection, during the hearing; and (3) the Clerks' testimony "about specific instances over the years of Mr. Allen's behavior in the presence of the child."

With respect to the trial court's ex parte interview of N. C., the Supreme Court has ruled that a court does not abuse its discretion in interviewing a child witness outside the presence of other litigants.[4] However, the Supreme Court went on to state that such statements "made by the child[ ] not on the record *cannot be used to uphold the decision of the lower court.*"[5] Accordingly, we cannot uphold the trial court's ruling based upon its ex parte communication with the child.

Similarly, we cannot affirm the trial court's ruling based upon the letter written by N. C. to the trial court. As the letter was never authenticated, it constitutes hearsay.[6] Thus, it lacks probative value.[7]

Finally, the testimony of Officer West and the Clerks does not support the trial court's ruling. The trial court issued the protective order based upon Allen's alleged stalking of N. C. "A person commits the offense of stalking when he or she follows, places under surveillance, or contacts another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the other person."[8] Thus, to support the trial court's ruling, there must be some evidence that Allen placed N. C. under

---

[3] *Brevard, Inc. v. Broadwater Mgmt.*, 235 Ga. App. 496, 497 (1) (b) (508 SE2d 747) (1998).

[4] See *Kohler v. Kromer*, 234 Ga. 117, 118 (214 SE2d 551) (1975).

[5] (Emphasis supplied.) Id.

[6] See *Aon Risk Svcs. of Ga. v. Commercial & Military Systems Co.*, 270 Ga. App. 510, 512 (1) (607 SE2d 157) (2004) ("Letters are incompetent as hearsay without the author being available for cross-examination and are generally not business records.").

[7] See *Dixon Dairy Farms v. Purina Mills, Inc.*, 267 Ga. App. 738, 739, n. 3 (601 SE2d 152) (2004).

[8] OCGA § 16-5-90 (a) (1).

surveillance or contacted him without his consent for the purpose of harassing and intimidating him. There is none.

Robin Clerk and Officer West both testified regarding the event that precipitated the filing of the petition in which Allen allegedly threatened N. C., frightening him. Again, however, this testimony is rank hearsay and lacks any probative value.[9]

Moreover, there is absolutely no evidence that Allen ever contacted N. C. without either his or his parents' consent. To the contrary, the record shows that N. C. spent time with his uncle with the parents' knowledge and consent. Although Allen acknowledged that the Clerks would occasionally request that he not have contact with N. C., he claims that he always honored such requests. When Kevin Clerk was asked if Allen honored requests to stay away from N. C., he responded, "I would say for the most part [he has honored the requests]. I can't think of any one instance." Given the absence of evidence on an essential element of stalking, the trial court erred in denying Allen's motion for directed verdict and in granting a protective order on the basis of stalking.

2. In view of our holding in Division 1, we need not address Allen's remaining enumerations of error.

*Judgment reversed. Johnson, P. J., and Barnes, J., concur.*

DECIDED JUNE 23, 2005.

*Garland B. Cook, Jr.*, for appellant.
*Magill & Atkinson, Stephen F. Dermer*, for appellee.

---

[9] See *In the Interest of E. C.*, 271 Ga. App. 133, 135 (1) (609 SE2d 381) (2004) ("it is well settled that hearsay lacks probative value, even if unobjected to").