## A11A1207. JORDAN v. JORDAN et al.
(721 SE2d 119)

BARNES, Presiding Judge.

John Jordan sued his ex-wife, Mildred Jordan, and her divorce lawyer, Charles Joyner, contending that they fraudulently induced him to sign an unfair settlement agreement by promising to reallocate the marital assets after the divorce became final. After the settlement was incorporated into the final judgment and decree of divorce, he claimed, the defendants reneged on the deal. Mr. Jordan also sued Joyner for breach of fiduciary duty, contending Joyner's prior representation of Jordan constituted a conflict of interest. In a detailed, thoughtful 15-page opinion, the trial court granted summary judgment to the defendants, and Mr. Jordan appeals. For the reasons that follow, we affirm.

On appeal we review the trial court's grant of summary judgment de novo to determine whether the evidence, viewed in the light most favorable to the nonmoving party, demonstrates a genuine issue of material fact. *Ford v. Bank of America Corp.*, 277 Ga. App. 708 (627 SE2d 376) (2006). Summary judgment is proper only when no issue of material fact exists and the moving party is entitled to judgment as a matter of law. Id. When reviewing the grant or denial of a motion for summary judgment, this court conducts a de novo review of the law and the evidence. *Wachovia Bank v. Moody Bible Institute &c.*, 283 Ga. App. 488, 489 (642 SE2d 118) (2007).

So viewed, the record shows that the Jordans were married in 1978, and divorced in 2007. Joyner represented Mr. Jordan from 2002 to 2004 in unsuccessful litigation against a bankrupt debtor, and was also a neighbor. According to Joyner's affidavit, Mr. Jordan approached him and asked him to represent Mrs. Jordan and handle the Jordans' uncontested divorce. Joyner said he initially refused to represent Mrs. Jordan because of his professional relationship with Mr. Jordan, but ultimately agreed to do so on the condition that the divorce remain uncontested. According to Joyner, the Jordans had agreed on the terms of their settlement before he became involved. They came to his office, told him their terms, and he drafted the documents, he said. He saw them once more, when they returned to sign the paperwork. After the divorce complaint was filed, the Superior Court of Dawson County granted Mrs. Jordan's motion for a judgment on the pleadings and issued a final judgment and decree incorporating the settlement agreement.

Mr. Jordan remembers his interactions with Joyner differently. According to Mr. Jordan, he learned of the settlement terms when Joyner presented him with a draft of an agreement, and he initially protested that it was not a fair division of marital assets. Under the terms of the agreement, which was ultimately incorporated into the

divorce decree and executed, the Jordans divided their personalty, including cars and furniture. Mr. Jordan quitclaimed his interest in three vacant lots and gave Mrs. Jordan his interest in "Bad Bob's Bar-B-Q" restaurant. Mrs. Jordan, who had never earned any income during the 30-year marriage, received no alimony but obtained $560,000 from the couple's joint brokerage account, the amount remaining after each party removed $120,000. She also quitclaimed her interest in the marital residence, which was 11,600 square feet large and had been on the market for six years. The property was appraised at one point for nearly $2.9 million, and was mortgaged for almost $2 million. After the final divorce decree, the bank foreclosed on the property and bought it for $1 million. It sent Mr. Jordan a Form 1099 imputing a capital gain to him of almost $1 million, based on the difference between the amount mortgaged and the amount obtained in the foreclosure.

Mr. Jordan contends that Joyner told him the settlement agreement was just a "formality" necessary to prevent the lender from seizing marital assets for any deficiency due after the imminent foreclosure, and made an oral "side agreement" dividing the assets more equitably. When he asked if he should obtain his own lawyer, Mr. Jordan says, Joyner assured him he did not need to, so he signed the agreement. The lawyer obtained the final decree. When Mr. Jordan sent Joyner a fax outlining some terms of the oral "side agreement," both Joyner and Mrs. Jordan denied ever discussing it.

Mr. Jordan sued Mrs. Jordan and Joyner for conspiracy and fraud, and also sued Joyner for breach of fiduciary duty, in the State Court of Forsyth County. Mrs. Jordan counterclaimed, contending that Mr. Jordan had failed to make the monthly payments due on a line of credit secured by the vacant lots to which she now holds title, forcing her to make monthly payments totaling $93,500 so the bank would not foreclose on the lots. Joyner and Mrs. Jordan both moved for summary judgment on Mr. Jordan's claims against them, and Mrs. Jordan moved for summary judgment on her counterclaim.

The trial court denied summary judgment to Mrs. Jordan on her counterclaim for $95,000, holding that her affidavit alone was insufficient to establish the amount she had paid. Mrs. Jordan did not cross-appeal this ruling. The trial court also granted judgment to both defendants on Mr. Jordan's claims, holding that the settlement agreement had been incorporated into a final divorce decree in another court, and thus could not be attacked separately. The trial court held that it, the State Court of Forsyth County, could not vacate a judgment of the Superior Court of Dawson County, which is the only court with jurisdiction to void the divorce decree.

The trial court also held that, even if it could consider the merits of the fraud claim against Joyner and Mrs. Jordan, the evidence

showed that Mr. Jordan entered into the divorce settlement agreement for his own fraudulent purposes, and thus could not challenge it under the principle of in pari delicto.

1. Mr. Jordan contends the state court erred in holding that he could not rescind the settlement agreement and sue in tort for fraud or breach of fiduciary duty without first having the final divorce decree set aside. He argues that because the "settlement agreement was not contingent on any divorce decree, . . . the divorce decree was irrelevant to the validity or invalidity of this purported agreement." Our law is clear, however, that a party cannot collaterally attack the validity of a settlement agreement that has been incorporated into a final divorce decree. While Mr. Jordan is correct that a settlement agreement is a contract, that contract was incorporated into a final judgment and decree, and its merits can only be addressed by setting aside the final decree. *Mahan v. Jackson*, 147 Ga. App. 495, 498 (249 SE2d 311) (1978) (ex-spouse estopped from attacking on grounds of fraud an agreement incorporated into final decree until decree is set aside). "The obligations and rights created by an incorporated settlement agreement can be affected only by means of an action addressing the underlying divorce decree itself." (Citation and punctuation omitted.) *Walker v. Estate of Mays*, 279 Ga. 652, 653 (1) (619 SE2d 679) (2005). See *Mehdikarimi v. Emaddazfuli*, 268 Ga. 428, 429 (2) (490 SE2d 368) (1997). This is so because "the rights of the parties after a divorce is granted are based not on the settlement agreement, but on the judgment itself." *White v. White*, 274 Ga. 884, 885 (2) (561 SE2d 801) (2002). In *White*, the ex-husband argued that the trial court could not rely on the disclosure provision of the settlement agreement to set aside the decree, as the parties' rights were based on the final judgment and not the agreement. In affirming, the Supreme Court noted that the trial court had properly relied on OCGA § 9-11-60 (d) (2), which provides that a judgment procured by fraud may be set aside. A "complaint to void settlement agreement incorporated into final judgment and decree of divorce" is the equivalent of a motion to set aside the final judgment under OCGA § 9-11-60. *Mehdikarimi*, 268 Ga. at 428-429. "Thus, whatever claim Appellant[ ] ha[s] is founded on the final decree, and not on the underlying agreement." *Walker*, 279 Ga. at 653 (1) (claim by ex-spouse against estate of deceased ex-spouse, while denominated as breach of contract, was "domestic relations" case and thus not directly appealable).

Mr. Jordan's cites to the contrary all involve settlement agreements that were not incorporated into final judgments of divorce, and therefore the usual rules of contract construction applied. See, e.g., *Guthrie v. Guthrie*, 277 Ga. 700, 702-703 (1) (594 SE2d 356) (2004) (agreement with spouse who died before divorce finalized

should be analyzed under usual contract rules, not under discretionary rules applicable in divorce cases); *Eickhoff v. Eickhoff*, 263 Ga. 498, 499 (1) (435 SE2d 914) (1993), overruled on other grounds, *Lee v. Green Land Co.*, 272 Ga. 107, 108 (527 SE2d 204) (2000) (suit on unincorporated settlement agreement "is simply a contract action in which the parties thereto happen to be former spouses").

The trial court did not err in holding that Mr. Jordan cannot attack the validity of the settlement agreement without having the final decree set aside, and granting summary judgment on his claims of fraud and breach of fiduciary duty.

2. Mr. Jordan further asserts that the trial court erred in finding that his claims are also barred because he entered into the settlement agreement with the purpose of defrauding his creditors. Mr. Jordan stated in an affidavit that Joyner told him "it was very important for me to transfer all of my assets to Mrs. Jordan" or the mortgage holder would take them, and further stated that he signed the settlement agreement because he thought "it was a mere formality" and would not be binding. An executed contract made for the purpose of defrauding creditors, however, "is valid and binding between parties." *Wofford v. Chambers Lumber Co.*, 226 Ga. 213, 215 (173 SE2d 698) (1970). "So far as such contracts have been executed, the court will not disturb them, but leave the parties as we find them; and so far as they are not executed, will afford no aid whatever to enforce them." *Camp v. Aetna Ins. Co.*, 170 Ga. 46, 51 (152 SE 41) (1930). "This is so, not because the law is disposed to aid one of the wrongdoers in retaining the fruits of the unlawful transaction, but because it denies the benefit of its remedies to the other." (Citation and punctuation omitted.) *Langan v. Langan*, 224 Ga. 399, 402 (2) (162 SE2d 405) (1968).

Pretermitting whether the court erred in finding that Mr. Jordan's fraud claim was barred because he entered into a contract to defraud his creditors, however, we find no ground for reversal, because the grant of summary judgment was otherwise proper for the reasons addressed in Division 1. See *DaimlerChrysler Motors Co. v. Clemente*, 294 Ga. App. 38, 57 (12) (668 SE2d 737) (2008) (trial court's exclusion of evidence will be affirmed if right for any reason).

*Judgment affirmed. Adams and Blackwell, JJ., concur.*

DECIDED NOVEMBER 15, 2011 —
RECONSIDERATION DENIED DECEMBER 2, 2011 —

*England & England, J. Melvin England*, for appellant.
*Carlock, Copeland & Stair, Johannes S. Kingma, Shannon M.*

*Sprinkle, Andrew W. Eaton, Banks & Stubbs, Daisy D. Weeks*, for appellees.