**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**May 23, 2014**

# In the Court of Appeals of Georgia

A14A0326. BLUE v. HEMMANS.

BARNES, Presiding Judge.

Tonella Hemmans filed a petition against her ex-husband, Kelvin Blue, seeking a change in child custody and child support. Following an evidentiary hearing, the trial court granted the petition, transferring sole physical custody of the child to Hemmans and directing Blue to pay child support to her. On appeal, Blue contends that the trial court abused its discretion in finding a change in condition sufficient to justify a modification in custody because several of the court's key factual findings were unsupported by the evidence. Blue further contends that the trial court improperly relied upon statements made by the child in chambers outside the presence of the parties and counsel, and that there was no evidence to support the amount of child support awarded by the court.[1] Because the trial court clearly erred in several

---

[1] Hemmans failed to file an appellee's brief responding to Blue's contentions.

of its material findings of fact, we vacate the trial court's order and remand for the court to correct its factual findings to conform to the evidence and reconsider whether a modification of custody is warranted.

On appeal from a child custody decision, we view the evidence in the light most favorable to the trial court's order. *Mitcham v. Spry*, 300 Ga. App. 386 (685 SE2d 374) (2009). So viewed, the evidence shows that Blue and Hemmans were married and had two children, a daughter born in 1993 and a son born in 2001. The instant case concerns only the custody of the son.

Blue and Hemmans were divorced in Camden County in 2002. Under the divorce decree, Hemmans was awarded sole physical custody of the two children. Blue was awarded visitation with the children, including alternating weekends and five weeks of summer vacation. Blue also was ordered to pay monthly child support of $865.

Blue and Hemmans continued to live in Camden County after their divorce. However, in December 2009, Hemmans moved to Hawaii with the children. Blue filed a petition for a change in custody in the Superior Court of Camden County, contending that Hermann had "absconded" with the children to Hawaii and that the relocation was a material change in condition affecting the children's welfare.

2

Following an evidentiary hearing, the trial court entered an order in June 2010 finding that there had been a material change in condition and awarding Blue sole physical custody of the son. The trial court awarded Hemmans the same visitation rights with the son that had been awarded to Blue in the 2002 divorce decree, including five weeks of summer vacation. Among other rights, the trial court also awarded Hemmans the right to participate in the son's school activities and to have access to his school records. In contrast, the trial court allowed the daughter, who was over 14 years old, to choose her custodial parent, and she elected to continue living with Hemmans in Hawaii. See OCGA § 19-9-3 (a) (5).[2] The trial court did not award any child support to Blue in its June 2010 order.

The son returned to live with Blue in Camden County in the summer of 2010. Subsequently, in October 2012, Hemmans and the daughter moved from Hawaii to Washington State. In April 2013, Hemmans filed a pro se petition for a change in custody and for child support in the Superior Court of Camden County, seeking to

___

[2] OCGA § 19-9-3 (a) (5) provides in part:
In all custody cases in which the child has reached the age of 14 years, the child shall have the right to select the parent with whom he or she desires to live. The child's selection for purposes of custody shall be presumptive unless the parent so selected is determined not to be in the best interests of the child. . . .

have the trial court transfer sole physical custody of the son back to her.[3] Hemmans

alleged in her petition that she and her daughter had been denied visitation and phone

contact with her son following entry of the June 2010 order, and that this denial was

a material change in condition affecting the son's welfare. Blue filed an answer to the

petition, denying that Hemmans or the daughter had been prevented from visiting or

talking on the phone with the son. An affidavit signed by the son, who was 12 years

old at the time, also was filed with the court. In the affidavit, the son expressed his

desire that Blue continue to have physical custody over him. See OCGA § 19-9-3 (a)

(6).[4]

On May 9, 2013, the trial court held a temporary hearing on Hemmans' petition

and conducted an in-camera interview with the son with the consent of both parties.

The trial court entered a temporary order later that month granting Hemmans

---

[3] The petition was assigned to a different judge than the one entered the June 2010 custody order.

[4] OCGA § 19-9-3 (a) (6) provides in part:
In all custody cases in which the child has reached the age of 11 but not 14 years, the judge shall consider the desires and educational needs of the child in determining which parent shall have custody. The judge shall have complete discretion in making this determination, and the child's desires shall not be controlling. . . .

visitation with the son in Washington State from May 2013 through part of July 2013 and scheduled a final hearing for July 12, 2013.

At the July 12, 2013 final hearing, Hemmans appeared pro se and testified about the visitation and other issues that had arisen since June 2010, when sole physical custody of the son had been awarded to Blue. According to Hemmans, she had traveled back to Camden County on two occasions after Blue was awarded custody in June 2010, once in June 2011 and again in April 2012. She testified that in June 2011, she traveled to Camden County to pick up her son and take him back with her for five weeks of summer vacation in Hawaii, as authorized by the June 2010 order. Hemmans testified that she had given Blue notice of her intention to exercise her summer visitation rights two months before her arrival, but Blue still refused to allow the son to go back with her to Hawaii. As a result of Blue's refusal, Hemmans was denied any summer visitation with her son in 2011.

Hemmans testified that she returned to Camden County in April 2012 to attend a court hearing on an unrelated criminal matter. During her trip, she visited her son at his school over the course of three days but did not contact Blue or otherwise attempt to exercise her visitation rights. According to Hemmans, while she was visiting her son at school, school officials told her that Blue had provided them with

5

only the first page of the June 2010 custody order, and, as a result, they had been unaware that Hemmans was authorized to participate in the son's school activities and to have access to his school records, which were addressed on a subsequent page of that order. Blue objected to the admission of this testimony on hearsay grounds.

Hemmans further testified that Blue had interfered with her and her daughter's ability to have contact with the son because Blue had "blocked" their telephone numbers for over a year. As a result of the blocked numbers, Hemmans testified that she had been unable to have any communication with her son for "months at a time."

Blue and his current wife also testified at the hearing. They denied improperly interfering with Hemmans' visitation rights or with her ability to speak with the son on the telephone. In contrast to Hemmans, Blue testified that Hemmans never gave him advanced notice of her plans for summer visitation in 2011 and instead had called him on the morning she arrived in Camden County and informed him that she was coming to pick up the son. Blue's current wife further explained that they refused to allow the son to go with Hemmans because she would not tell them the date the son would be returning to Camden County from Hawaii.

In addition to receiving witness testimony at the July 12, 2013 hearing, the trial court stated that it planned to conduct a second in-camera interview with the son.

6

Blue initially objected to a second in-camera interview, and the trial court replied that the court "just want[ed] to see how he's doing versus how he was doing when I talked to him last time." Blue responded, "Limiting it to that, that'll be fine." The trial court subsequently spoke with the son in chambers.

Following the hearing and second in-camera interview, the trial court entered an order on July 23, 2013 in which it granted Hemmans' petition, awarding her sole physical custody of the son and child support. The order contained detailed findings of fact and conclusions of law. Among other factual findings, the court found that Hemmans had testified at the June 12, 2013 hearing that Blue "has withheld visitation with [the son] on multiple occasions"; that Hemmans had been prohibited by Blue from exercising her summer visitation rights in 2011; and that Hemmans "was again denied visitation with [the son] in April[] 2012." The trial court further found that Blue had "willfully withheld" from the son's school the fact that Hemmans had joint legal custodial rights to the son, which had the effect of denying Hemmans' "right to participate in [the son's] school activit[ies]" and of denying her access to the son's school records. Additionally, the court found that Hemmans "was continually denied telephone contact" with the son by Blue.

Among other conclusions of law, the trial court concluded that Blue "has willfully acted to withhold [Hemmans'] visitation rights" and "has continually denied [Hemmans] overnight visitation" with the son since the entry of the June 2010 order. The trial court further concluded that Blue had failed to "provide [the son's] school with notice of [Hemmans'] joint legal status, thereby denying [Hemmans] her right to participate in the [son's] school activities and . . . everyday life." Consequently, the trial court concluded that there had been a material change in condition justifying a change in custody of the son.

The trial court also concluded that it was in the best interest of the son to change the custody arrangement and that, based on what was said by the son during the first in-camera interview, the court would "give no weight" to the son's affidavit that had been filed in the case. Furthermore, the trial court noted that "no evidence was presented . . . on which it could make a determination regarding modification [of] child support." The trial court ruled that given this lack of evidence, the court would require Blue to pay Hemmans the amount of child support ordered in the 2002 divorce degree, which was $865 per month.

1. Blue contends that the trial court abused its discretion in finding a change in condition sufficient to justify a modification in custody of the son because several

8

material factual findings upon which the trial court relied in reaching its decision were unsupported by the evidence. We agree.

> A petition to change child custody should be granted only if the trial court finds that there has been a material change of condition affecting the welfare of the child since the last custody award. If there has been such a change, then the court should base its new custody decision on the best interest of the child.

*Viskup v. Viskup*, 291 Ga. 103, 105 (2) (727 SE2d 97) (2012). It is well-established that the repeated denial of a non-custodial parent's visitation rights can constitute a material change in condition. See *Bull v. Bull*, 243 Ga. 72 (2) (252 SE2d 494) (1979); *Tyree v. Jackson*, 226 Ga. 690, 696 (3) (177 SE2d 160) (1970); *Jones v. Kimes*, 287 Ga. App. 526, 528 (652 SE2d 171) (2007). In contrast, the denial of visitation rights on a single occasion, without more, does not rise to the level of a material change in condition justifying a change in custody. See *Osborne v. Osborne*, 227 Ga. 235, 236 (1) (179 SE2d 776) (1971).

A trial court's determination that a material change in condition has occurred is reviewed only for an abuse of discretion. *Vines v. Vines*, 292 Ga. 550, 552 (2) (739 SE2d 374) (2013). Nevertheless, "[a]lthough trial courts have wide discretion in change of custody proceedings, that discretion is not without limits." *Durham v.*

*Gipson*, 261 Ga. App. 602, 605 (1) (583 SE2d 254) (2003). Generally speaking, an abuse of discretion occurs where the trial court "misstates or misapplies the relevant law." *Mathis v. BellSouth Telecommunications*, 301 Ga. App. 881 (690 SE2d 210) (2010). See *Donohoe v. Donohoe*, 323 Ga. App. 473, 476 (1) (746 SE2d 185) (2013) (physical precedent only). An abuse of discretion also can occur if the trial court "clearly errs in a material factual finding." *State v. Pickett*, 288 Ga. 674, 679 (2) (d) (706 SE2d 561) (2011). See *In the Interest of Q. S.*, 310 Ga. App. 70, 77-78 (2) (712 SE2d 99) (2011); *Bridges v. Bridges*, 197 Ga. App. 608, 609 (398 SE2d 860) (1990); *In the Interest of C. R. M.*, 179 Ga. App. 38 (345 SE2d 141) (1986).

Here, the trial court clearly erred in several of its factual findings that were material to its decision to change custody. As discussed above, the trial court found that Blue had denied Hemmans visitation with the son "on multiple occasions," including in April 2012, and had "continually denied [Hemmans] overnight visitation with the [son]." But the evidence presented at the July 12, 2013 hearing, even when construed in the light most favorable to Hemmans, shows only that she was denied visitation with her son on one occasion, namely, in the summer of 2011. Hemmans did not testify to any other instances in which she sought to exercise her visitation rights but was thwarted by Blue, and she testified that she did in fact visit with her

10

son during her April 2012 trip to Camden County. Consequently, the trial court's findings regarding the extent to which Hemmans had been denied visitation by Blue are unsupported by the record.

In granting the change in custody, the trial court also relied upon its finding that Blue had "willfully withheld" from the son's school the fact that Hemmans had joint legal custodial rights to the son, which the court concluded had the effect of denying Hemmans' "right to participate in [the son's] school activit[ies]" and of denying her access to the son's school records. But the only evidence presented at the hearing regarding the school was Hemmans' testimony about what school officials told her during her April 2012 trip to Camden County, and Blue correctly objected to that testimony on hearsay grounds. "'Hearsay' means a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." OCGA § 24-8-801 (c) (2013).[5]

> In its simplest terms, the hearsay rule applies when one party offers as evidence a statement made by another person at [a] time when the person was not testifying at the trial or hearing. The party making the

[5] The new Georgia Evidence Code applies in this case. See Ga. Laws 2011, Act 52, § 101 ("This Act shall become effective on January 1, 2013, and shall apply to any motion made or hearing or trial commenced on or after such date.").]

11

offer wants to use the statement in order to prove "the truth of the matter asserted" in the statement.

Alexander Scherr, Green Ga. Law of Evidence § 8:2 (2013). That is precisely what Hemmans attempted to do in her testimony regarding what the school officials told her, and thus her testimony should have been disregarded by the trial court as inadmissible hearsay in light of Blue's objection. It follows that the trial court's finding that Blue interfered with Hemmans' right to participate in school activities and to have access to school records was unsupported by competent evidence.

In contrast, there was evidence presented at the hearing to support the trial court's finding that Hemmans "was continually denied telephone contact" with her son by Blue. In this respect, Hemmans testified that Blue "blocked" her telephone numbers for over a year, causing her to be unable to communicate with her son "for months at a time." Hemmans' testimony was sufficient to support the trial court's factual finding regarding telephone contact.

In sum, the trial court clearly erred in some, but not all, of the factual findings that it relied upon to support its conclusion that there was a material change in condition authorizing a modification in custody. Specifically, there was evidence to support the trial court's findings that Hemmans was improperly denied visitation with

her son in the summer of 2011 and was denied telephone contact with him for an extended period of time, but not to support its findings that Hemmans had "continually" been denied overnight visitation on "multiple occasions" by Blue or that Blue had interfered with Hemmans' right to participate in the son's school activities and to have access to his school records.

"If the trial court . . . clearly errs in a material factual finding, the trial court's exercise of discretion can be affirmed only if the appellate court can conclude that, had the trial court used the correct facts and legal analysis, *it would have had no discretion to reach a different judgment*." (Emphasis supplied.) *Pickett*, 288 Ga. at 679 (2) (d). See *In the Interest of Q. S.*, 310 Ga. App. at 78 (2). While the corrected facts as stated above would be sufficient to sustain a finding of a material change in condition in the present case, see *Arp v. Hammonds*, 200 Ga. App. 715, 717-718 (409 SE2d 275) (1991), we cannot say that the corrected facts would absolutely demand such a finding by the trial court. See generally *Scott v. Scott*, 227 Ga. App. 346, 348 (1) (489 SE2d 117) (1997) (emphasizing that "the trial court is vested with broad discretion in making decisions concerning custody"). Consequently, we must vacate the trial court's custody order and remand for the court to exercise its discretion again under corrected findings of fact. See *Pickett*, 288 Ga. at 680 (2) (d); *In the Interest of*

13

*Q. S.*, 310 Ga. App. at 78 (2); *Bridges*, 197 Ga. App. at 609; *In the Interest of C. R. M.*, 179 Ga. App. at 38.

2. Blue also contends that the trial court improperly relied upon statements made by the son in chambers outside the presence of the parties and counsel in determining what custody arrangement would be in the best interest of the son. A trial court does not abuse its discretion in a custody case by interviewing a child alone in chambers where, as here, the parties do not object or otherwise can be found to have acquiesced to such an arrangement. See *Kohler v. Kromer*, 234 Ga. 117, 118 (214 SE2d 551) (1975). But any statements made by the child that are not on the record cannot be used to uphold the trial court's custody decision on appeal. See id.; *Peeples v. Newman*, 209 Ga. 53, 57 (2) (70 SE2d 749) (1952); *Allen v. Clerk*, 273 Ga. App. 896, 898 (1) (616 SE2d 213) (2005). In light of our decision in Division 1 that the trial court's custody order must be vacated and remanded for the court to determine whether there was a material change in condition under corrected factual findings, we need not resolve whether there was other record evidence, apart from the trial court's ex parte communications with the son, to support the conclusion that a change in custody would be in the son's best interest.

14

3. Lastly, Blue contends that the trial court erred in setting the amount of child support based on the 2002 divorce degree rather than by receiving evidence and considering the child support guidelines to arrive at a current calculation. See OCGA § 19-6-15 (b) (1) (calculation of child support requires, among other things, a determination of the monthly gross income of both parties); *Stowell v. Huguenard*, 288 Ga. 628 (706 SE2d 419) (2011) ("The guidelines for computing the amount of child support are found in OCGA § 19-6-15 and must be considered by any court setting child support.") (citation and punctuation omitted). Because the trial court's award of child support was predicated on its decision to change custody of the son, our decision in Division 1 to vacate the custody order likewise requires us to vacate the trial court's child support award and remand for reconsideration in light of this opinion.

*Judgment vacated and case remanded with direction. Boggs and Branch, JJ., concur.*