**SECOND DIVISION**
**MILLER, P. J.,**
**MERCIER, J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**January 29, 2021**

# In the Court of Appeals of Georgia

A20A1779. RODGERS v. RODGERS.

MERCIER, Judge.

Following the trial court's February 2020 final order awarding custody of four minor children to Bryan Rodgers ("the father"), Melissa Rodgers ("the mother") appeals, asserting several claims of error. Because the trial court erred in considering matters outside the record, we vacate the court's order and remand this case for further proceedings. We further direct the trial court to clarify its ruling with regard to the marital home and address any remaining contested issues upon remand.

The record reveals that the parties were married in 2005, and four children were born of the marriage. On April 2, 2018, the mother filed a complaint for divorce seeking legal and primary custody of the minor children. The father answered the complaint and counterclaimed for joint legal custody of the children, requesting

visitation and that a parenting plan be established. On May 31, 2018, the parties consented to a temporary order granting them joint legal custody of the children and designating the mother as the primary physical custodian, with the father having parenting time. The parties also agreed that the mother would have temporary sole possession of the marital residence and would be responsible for all expenses and mortgage payments. The father was ordered to pay $1,202 per month in child support.

On December 15, 2018, the parties executed a settlement agreement that included a parenting plan. Among other things, they agreed to joint legal custody of the children with the mother having primary physical custody and the father having visitation every other weekend; the father paying $1,090 in monthly child support; an equal division of the children's medical expenses; and the mother retaining the martial home and being responsible for all mortgage payments, taxes, and insurance (and that she would have three years to refinance the mortgage and pay the father $20,000 as equitable division). The settlement agreement was approved and incorporated into a final judgment and decree of divorce that was signed by the trial court on December 19, 2018, and entered on December 28, 2018.

On December 27, 2018, one day before the court's order was filed, the father filed a "Motion to Rescind Settlement Agreement and for Primary Physical

2

Custodianship." He asserted that it was in the children's best interest that he have primary physical custody because, among other things, the mother had told him she was having a difficult time caring for the children, "her heat had broken in her home," and "the children were 'freezing.'" He asserted further the mother told him that she was leaving around December 8, 2018, to stay with a friend in North Dakota and would return in March 2019. The father moved two of the children to a new school in reliance on the mother's statements, but he claimed the mother then changed course and informed him that she would be returning in December 2018. The father also asserted that the mother's conduct was erratic and unpredictable, and that he was concerned about numerous infestations of lice in the children's hair as well as their poor academic performance at school. The mother filed a response denying the father's claims and requesting that the settlement agreement be enforced.

Following a January 2019 hearing, on April 8, 2019, the trial court entered a temporary child custody and child support order that vacated the final judgment and decree of divorce.[1] The court transferred primary physical custody of the children to the father, with the mother having visitation, and ordered that the mother pay $395

---

[1] The order stated that "[t]he Final Judgment and Decree of Divorce, Settlement Agreement, Parenting Plan A, Child Support Addendum and Child Support Worksheets filed in this action on December 28, 2018, are hereby rescinded."

3

per month in child support. More than four months later, on August 30, 2019, after a hearing where the mother appeared pro se,[2] the trial court entered an order granting the parties a "total divorce," but keeping the "civil action open" with regard to financial issues, child custody, and visitation. The court ordered that the terms of the April 2019 temporary order remain in full force until further order of the court.

On January 13, 2020, the trial held a final hearing on the remaining issues. The mother again appeared pro se. The trial court entered a "Final Order" on February 13, 2020, finding that it was in the best interests of the children to remain with their father and awarding the father sole legal and physical custody. The court found that the mother could not have unsupervised visitation with the children because of a safety plan issued by the Department of Family and Children Services ("DFACS"). The court found further that the mother had abandoned the marital home, was in arrears on mortgage payments, child support payments, and her portion of the children's medical expenses, and that she was romantically involved with a convicted felon. The father was awarded title to two vehicles, the mother was awarded title to a third, the mother was ordered to pay $912.36 in monthly child support and to pay

_____

[2] The trial court entered an order allowing the mother's counsel to withdraw on August 21, 2019.

4

the amounts she owed for the children's medical expenses and childcare, and the parties were ordered to exchange any photo albums so that they could copy photos. The mother now appeals.[3]

1. The mother argues that the trial court erred in allowing rescission of the parties' settlement agreement. She asserts that it could only be rescinded due to fraud, inducement, incapacity, or some other defense to a contract, and that the father's motion to rescind was really an improper attempt to modify the parties' divorce decree without filing a separate action for modification on the basis of a change in material circumstances.

The trial court did not rule upon the father's motion to rescind the settlement agreement before it entered the December 2018 final judgment and decree of divorce, likely because the motion was filed one day before the judgment was entered and eight days after the order was signed. After entry of the court's judgment, "[t]he obligations and rights created by an incorporated settlement agreement can be affected only by means of an action addressing the underlying divorce decree itself. This is so because the rights of the parties after a divorce is granted are based not on

---

[3] New counsel for the mother entered an appearance on March 5, 2020.

5

the settlement agreement, but on the judgment itself." *Jordan v. Jordan*, 313 Ga. App. 189, 191 (1) (721 SE2d 119) (2011) (citations and punctuation omitted).

Although the father did not amend his motion or file a new one after entry of the judgment, the trial court treated his earlier-filed motion to rescind the settlement agreement as a motion to "rescind the final order in light of . . . developments" after the order was signed. At the hearing on the motion, evidence was presented that a male friend had been sleeping in the bed with the mother and that she had resigned from her job and was unemployed (contrary to the child support worksheet in the settlement agreement that indicated the mother was employed and could contribute to the children's support). Following the presentation of this evidence, the court determined that the father should have physical custody of the children until "further order of the [c]ourt. The [c]ourt is going to be impacted upon further testimony at another time when [the mother] has secured employment." The court then entered a temporary order effectively vacating the final judgment and decree of divorce.

The mother argues that the trial court erred in rescinding the settlement agreement because the father was bound by it as he presented no defense to the contract. Again, however, after a divorce is granted, the rights of the parties are not

6

based on the settlement agreement but on the judgment. See *Jordan*, supra. Therefore, the mother's arguments regarding the rules of contract construction are misplaced.

The mother argues further that to challenge the divorce decree provision awarding her primary physical custody of the children, the father was required to file a separate action for modification of custody alleging a change in material circumstances. However,

> [a] trial judge has the inherent power during the same term of court in which the judgment was rendered to revise, correct, revoke, modify or vacate the judgment, even upon his own motion. Moreover, this inherent power may be extended beyond the term in which a judgment was entered when a motion for reconsideration is filed within that same term of court.

*Todd v. Todd*, 287 Ga. 250, 253 (2) (703 SE2d 597) (2010) (citations and punctuation omitted).

Although the father did not file a formal motion for reconsideration after entry of the December 2018 final judgment and decree of divorce, it appears from the hearing on the matter that the trial court treated his motion to rescind the settlement agreement as a motion for reconsideration of the final judgment. As explained above, the father's counsel presented argument concerning events that transpired after the

settlement agreement was signed, the mother gave testimony about those events, and the trial court expressed concern about the mother's ability to care for the children.[4] We interpret the court's ruling as a grant of the father's motion for reconsideration filed during the same term of court as the judgment. The court therefore had the inherent authority to vacate its judgment, as it did, in the next term of court.[5] See *Todd*, supra at 253 (2) (the trial court had authority, beyond the term of court, to vacate portions of divorce decree and award custody of children to the other parent, where motion for reconsideration was filed during the same term of court as the final divorce decree). Under these circumstances, the father was not required to file a motion for modification of custody to challenge the judgment as the mother argues.

---

[4] As the Court in *Todd* explains, "[w]hile the trial court may consider the conduct of the parties on the issue of custody, the court ultimately must decide the custody question based on the best interest of the child. Indeed, the welfare of the child is the controlling factor in the court's determination of custody." 287 Ga. at 254 (2) (citation and punctuation omitted).

[5] The father's motion was filed during the same term of court as the final judgment and decree of divorce, and the trial court's order vacating that judgment was entered during the following term. See OCGA § 15-6-3 (5) (B) (Columbia County Superior Court terms of court commence on the fourth Monday in March and September).

2. The mother argues that the trial court erred in considering a safety plan by DFACS. She asserts that there was no evidence of a safety plan submitted below. We agree.

> When child custody, including visitation, is an issue between parents, the trial court has very broad discretion, looking always to the best interest of the child. When the trial court has exercised that discretion, this court will not interfere unless the evidence shows a clear abuse of discretion, and where there is any evidence to support the trial court's finding, this court will not find there was an abuse of discretion.

*Bishop v. Baumgartner*, 292 Ga. 460, 462 (738 SE2d 604) (2013) (citation and punctuation omitted).

> In the February 2020 final order, the trial court found that

> unsupervised visitation is presently prohibited by a safety plan of the Department of Family and Children Services . . . In light of the safety plan of the Department of Family and Children Services, an order structuring visitation by [the mother] would be speculative at best, and reckless as a matter of law and fact, at worst. The [c]ourt is without unbridled authority to risk either transgression. Accordingly, the [c]ourt orders that, to the extent that visitation with the children should be allowed in the future by the Department of Family and Children Services, [the father] shall allow [the mother] to exercise supervised visitation on the first and third Sundays of each month, from 1:00 P.M. until 3:00 P.M. Said visitation shall be exercised, at the discretion of

9

[the father], in his home or in a public place where he is present. [The mother] may not be accompanied for said periods of visitation by any other person.

But the transcript of the January 2020 evidentiary hearing does not contain any evidence of a DFACS safety plan. There was no testimony presented, or exhibit admitted, on the matter. The only mention of DFACS in the record on appeal appears in the transcript of the January 2019 hearing where the trial court, in questioning the fitness of both parents, asked counsel if the court should "trigger the services of [the] Department of Family and Children Services."

Following the filing of the parties' briefs in this Court, the father moved to supplement the trial court record with a copy of the safety plan.[6] The trial court held a brief hearing on the motion during which the judge explained that when he was "drawing the [final] order it was prominent in [his] mind that [he] had been told that there was a safety plan in place," but he did not recall any ex parte discussions. The judge explained further: "Apparently . . . my staff attorney . . . became aware of [the

---

[6] It appears that the safety plan was not even issued until two weeks after the final hearing. The plan alleged that the mother had spanked one of the parties' children with the metal part of a belt causing bruises, and it stated that the agency would conduct an investigation.

safety plan]. Whether or not he emailed me to summarize it, or whether he spoke to me, I don't know. But I obviously had knowledge[.]" After the mother's counsel explained that the DFACS investigation had been closed, the trial judge ruled that it would nevertheless supplement the record with the safety plan and the transcript of the hearing on the matter, and explained that "now we've got an issue as to whether or not the DFACS investigation is closed."

The trial court is prohibited from considering matters outside the record. See *Donohoe v. Donohoe*, 323 Ga. App. 473, 477 (1) (746 SE2d 185) (2013) (physical precedent only); see also *In the Interest of D. W.*, 294 Ga. App. 89, 94 (3) (a) (668 SE2d 533) (2008). The court therefore erred here in considering a DFACS safety plan that was not in evidence. And given that the trial court's ruling with regard to custody and visitation, specifically its finding that unsupervised visitation was prohibited by the DFACS safety plan, was based upon a matter outside the record, we must conclude that the court's error was harmful. Thus, the trial court's February 2020 final order must be vacated and this case remanded.

3. The mother argues that the trial court's August 2019 order granting a divorce while reserving custody and financial issues, violates Georgia law.[7] She asserts that the court's April 2019, August 2019, and February 2020 orders are completely silent as to the disposition of the marital home, personal property, and debt referenced in the parties' settlement agreement.

The mother is correct that a divorce decree should resolve all contested issues. *Brochin v. Brochin*, 277 Ga. 66, 67 (586 SE2d 316) (2003); *Edwards v. Edwards*, 260 Ga. 440 (396 SE2d 236) (1990). Uniform Superior Court Rule 24.7 provides: "Although the court may, in appropriate cases, grant judgment on the pleadings or summary judgment that the moving party is entitled to a divorce as a matter of law, no divorce decree shall be granted unless all contestable issues in the case have been finally resolved." As the Georgia Supreme Court has explained, "[t]he intent of this rule was to put an end to the practice of granting a no-fault divorce and severing the marital relationship without simultaneously resolving issues of alimony and child custody." *Brochin*, supra. Therefore, the trial court erred in entering the August 2019

---

[7] Although the mother appeals from the trial court's February 2020 final order, she may raise for consideration any interlocutory ruling below, including the trial court's August 2019 ruling. See OCGA § 5-6-34 (d); cf. *Sifuentes v. State*, 293 Ga. 441, 444 (2) n.3 (746 SE2d 127) (2013).

order granting the divorce without resolving the contested issues remaining, including child custody. See *Russ v. Russ*, 272 Ga. 438, 440 (1) (530 SE2d 469) (2000); *Edwards*, supra. Had the mother appealed from that order, we would have remanded this case for the trial court to enter a final judgment and decree of divorce addressing all contested issues. See *Russ*, supra. But here, the trial court arguably rendered any error harmless as it later purported to rule on the remaining contested issues in its February 2020 final order. See *Moate v. Moate*, 265 Ga. 418, 419 (456 SE2d 502) (1995) (even assuming violation of USCR 24.7, party not harmed by ruling because res judicata resulted in a judgment that disposed of all contested issues).

In the final order, the trial court resolved child custody, child support, visitation, title to vehicles, ownership of photo albums, and the expenses related to the children's daycare, medical care, and health insurance. But the mother argues that "contestable issues are still not adjudicated under the current status of the case," including the disposition of the marital home, personal property, and debts. The final order noted that "other issues pertaining to division of marital property and allocation of marital debt have been previously resolved or adjudicated." However, it does not appear that the trial court made an explicit ruling with regard to the martial home.

Since we vacate the trial court's February 2020 final order and remand this case in Division 2, we further direct the trial court, upon remand, to clarify disposition of the marital home and any other remaining contested issues.[8]

4. The mother contends that the trial court erred in finding that she was romantically involved with a convicted felon and that she had planned to deliver the children to the father, then visit a friend in North Dakota with no date of return. "When reviewing an order in a child custody case, we view the evidence in the light most favorable to the trial court's decision. We will not set aside the trial court's factual findings if there is any evidence to support them, and we defer to the trial court's credibility determinations." *Mashburn v. Mashburn*, 353 Ga. App. 31, 32 (836 SE2d 131) (2019).

In the final order, the trial court found that the mother "developed a romantic relationship with a convicted felon before she delivered the children to [the father] in December 2018." It appears that the trial court found this fact based upon the father's speculative testimony that he was "pretty sure" the mother's boyfriend was

---

[8] The mother also argues that the court made no disposition of personal property and debts, but she does not specify those items of property and debts in her brief. In any event, upon remand, the trial court should address any remaining contested issues.

14

"a felon." The trial court also found that in December 2018, the mother delivered the children to the father and "left Georgia to visit with a friend in North Dakota with no planned date of return." But there was no evidence presented that the mother had no planned date of return from North Dakota. The father claimed in his motion to rescind the settlement agreement that the mother "did not have a return ticket," but he also claimed in the same motion, and testified at the final hearing, that the mother told him she would return sometime in March of 2019. Both counsel argued at the January 2019 hearing that the mother and the father discussed various dates for the mother's return.

The mother is correct that the trial court's factual findings – that she was dating a convicted felon and had no planned date of return from North Dakota – were unsupported by competent evidence.[9] Compare *Anderson v. Anderson*, 278 Ga. 713, 714 (1) (606 SE2d 251) (2004) (trial court did not abuse its discretion in custody award where each of court's factual findings were supported by evidence). However, in light of our holding in Division 2 vacating the final order and remanding this case for further findings based upon competent evidence, we need not consider whether

---

[9] We note that there was no mention of the crime or crimes committed by the mother's boyfriend or any impact or potential impact of the relationship on the children.

other evidence supported the trial court's ruling. See *Blue v. Hemmans*, 327 Ga. App. 353, 358-360 (1) and (2) (759 SE2d 72) (2014) (where on appeal custody order was vacated on one ground because evidence did not support several of the trial court's material findings of fact, court declined to consider whether on another ground, other record evidence supported court's custody ruling).

*Judgment vacated and case remanded with direction. Miller, P. J., and Senior Appellate Judge Herbert E. Phipps., concur*.