**FOURTH DIVISION**
**DILLARD, P. J.,**
**BROWN, J., and SENIOR JUDGE FULLER**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 21, 2024**

# In the Court of Appeals of Georgia

A24A0371. IN THE INTEREST OF T. D. et al., CHILDREN (MOTHER).

FULLER, Senior Judge.

The mother of T. D., B. D., and A. D. appeals from the juvenile court's order granting physical custody of the children to their father and ordering the mother to pay child support. The mother argues that insufficient evidence supported the custody modification and that the juvenile court erred by failing to consider the father's supplemental income, by requiring the mother to pay more than half of the children's uninsured medical expenses, and by suspending her visitation with the children pending a further hearing. We agree that the juvenile court should have considered the father's supplemental income, and we reverse and remand for a recalculation of child support; otherwise, we affirm.

The record shows that the mother and father divorced in 2018. The superior court awarded joint legal custody of their three minor children, with the mother having primary physical custody.[1] At some point thereafter, the juvenile court placed the oldest child, T. D., in the temporary custody of the father as part of a delinquency proceeding. In 2022, the father petitioned the superior court to modify custody as to all three children, alleging that the delinquency proceeding constituted a material change in circumstances. The superior court transferred the petition to juvenile court. See OCGA § 15-11-11 (3).

At the juvenile court's hearing on the modification petition, the parties presented testimony from the mother, father, and several other adult witnesses. Although no court reporter was present, the testimony of these witnesses was recorded and subsequently transcribed.[2] The juvenile court also interviewed each

---

[1] The mother appealed, challenging other aspects of the divorce decree. We reversed the superior court's ruling as to the payment of certain expenses that are not at issue in this appeal, but we otherwise affirmed. See *Daniel v. Daniel*, 358 Ga. App. 880 (856 SE2d 452) (2021).

[2] "[A] tape recorder [i]s a permissible means of recordation" in juvenile court. *In the Interest of E. D. F.*, 243 Ga. App. 68, 69 (2) (532 SE2d 424) (2000). See OCGA § 15-11-17 (c) (proceedings in juvenile court "shall be recorded by stenographic notes or by electronic, mechanical, or other appropriate means capable of accurately capturing a full and complete record of all words spoken during the proceedings").

child individually in the presence of counsel, but these conversations were neither recorded nor transcribed. Following the hearing, the juvenile court found that "there has been some physical abuse and emotional abuse of the children by the children's mother," that T. D. and B. D. had expressed a desire to live with the father, and that it was in the siblings' best interest to stay together. Accordingly, the court awarded primary physical custody of all three children to the father and set a visitation schedule for the mother. The court also ordered the mother to pay $866.00 per month in child support, as well as 75 percent of the children's medical expenses not covered by insurance.

The mother filed a motion for new trial. While that motion was pending, the father filed a motion for contempt, alleging that the mother had failed to return A. D. to his custody after her visitation. The father also filed an emergency motion to suspend the mother's visitation with B. D., alleging that police had been called after the mother beat B. D. with a belt and he fled to a neighbor's house. The juvenile court entered an ex parte order suspending the mother's visitation as to both B. D. and A. D. Shortly thereafter, at the mother's request, the court continued that suspension "until further order of [the] Court." The court also denied the mother's motion for

new trial, appointed a guardian ad litem for the children, and scheduled another hearing for the following month. The mother appeals.

1. In three enumerations of error, the mother challenges the juvenile court's custody ruling, arguing that there was insufficient evidence of a material change of circumstances or that custody modification was in the children's best interests. On the record before us, however, we must presume that the juvenile court ruled properly.

Before instituting a change in custody, a trial court must first "determine whether there has been a material change in circumstances affecting the welfare of the child since the last custody award. If so, the trial court then determines whether the child's best interests will be served by a change in custody." *Brazil v. Williams*, 359 Ga. App. 487, 488 (1) (859 SE2d 490) (2021) (citation and punctuation omitted). On appeal, this Court remains "mindful that the Solomonic task of assigning the custody of children lies squarely upon the shoulders of the judge who can see and hear the parties and their witnesses, observe their demeanor and attitudes, and assess their credibility." *Weickert v. Weickert*, 268 Ga. App. 624, 626-627 (602 SE2d 337) (2004) (citation and punctuation omitted). We will affirm the trial court's decision if the record contains "any reasonable evidence" to support it. Id. at 627.

Here, the juvenile court's custody determination was based, in part, on its unrecorded interviews with the children. Without a transcript of those interviews, "we must presume that the evidence supported the trial court's ruling." *Bonds v. Bonds*, 241 Ga. App. 378, 379 (2) (527 SE2d 215) (1999) (affirming trial court's modification of custody where there was "no transcript of the proceedings or statutorily authorized substitute"). See also *Blue v. Blue*, 279 Ga. 550, 550 (1) (615 SE2d 540) (2005) ("in the absence of a transcript of the evidence, we must presume that the evidence support's the judge's findings").

The mother argues that "unrecorded in-chamber statements of children, which are not placed on the record by the trial court, can't be used to uphold an award of custody." In support, the mother cites authority holding that a superior court presiding over a child custody case may talk to children in chambers outside the presence of the parties and counsel if the parties do not object,[3] but any statements not made on the record cannot be used to support the superior court's ruling. See *Blue v. Hemmans*, 327 Ga. App. 353, 360 (2) (759 SE2d 72) (2014) (a superior court "does not

---

[3] Notably, counsel was present for the interviews of the children in this case. At the hearing on the mother's motion for new trial, her attorney attempted to summarize the evidence, including the children's statements, but the juvenile court rejected the summary as "very creative."

abuse its discretion in a custody case by interviewing a child alone in chambers where . . . the parties do not object or otherwise can be found to have acquiesced to such an arrangement . . . [b]ut any statements made by the child that are not on the record cannot be used to uphold the trial court's custody decision on appeal") (citation and punctuation omitted). See also *Kohler v. Kromer*, 234 Ga. 117, 118 (214 SE2d 551) (1975); *Frank v. Lake*, 266 Ga. App. 60, 62 (1) (596 SE2d 223) (2004).

This case, however, was heard in juvenile court. Accordingly, the rules pertaining to juvenile courts apply here. See OCGA § 15-11-15 (a), (b) (where superior court transfers custody determination to juvenile court, "the juvenile court shall proceed to handle the matter in the same manner as though the action originated under" the juvenile code). We have held that juvenile courts have discretion to conduct unrecorded in-chambers interviews of child witnesses. See *In the Interest of A. R.*, 248 Ga. App. 783, 784 (1) (546 SE2d 915) (2001). A party who acquiesces in this procedure in juvenile court waives a recording of the in-chambers interview, and the juvenile court may rely on testimony from the interview in issuing its ruling. See id. at 784 (2) (rejecting the appellants' challenge to the sufficiency of the evidence in a

6

deprivation proceeding in which the juvenile court's ruling was predicated on unrecorded testimony of the minor child).

Even if the custody ruling in this case had been made in superior court, the mother would have no cause to complain. The record shows that the decision not to record the children's interviews in this case was made by the parties' counsel, not by the juvenile court. When the father's attorney indicated his wish to call T. D. as a witness at the hearing, the following exchange occurred:

[MOTHER'S ATTORNEY]:   Do you want [T. D.] in chambers?

THE COURT:     All right. . . . What I'm going to do, because we don't have a chambers to go into, do I? I got a room or anything?

FEMALE VOICE:      The grand jury room is right here.

THE COURT:     Okay. We can go into the grand jury room, but I'm not gonna take the recorder, or we send everybody else out except for us and [T. D.] and the recorder. *So y'all make that decision*.

[MOTHER'S ATTORNEY]:   I'm okay with [T. D.] not having the recorder.

[FATHER'S ATTORNEY]:    I'm fine with that.

THE COURT:     Okay.

(Emphasis supplied.) Thus, the juvenile court gave the mother's attorney the option to record the interviews, but the attorney declined to do so. Under these circumstances, the mother did not simply acquiesce in the procedure; she chose it. It is axiomatic that "[a] party will not be heard to complain of error induced by their own conduct, nor to complain of errors expressly invited by him." *Mary Allen Realty & Mgmt. v. Harris*, 354 Ga. App. 858, 862 (1) (841 SE2d 748) (2020) (citation and punctuation omitted). Because the mother elected not to have the children's interviews recorded, she cannot carry her burden of showing affirmatively from the record that the juvenile court's custody ruling was error. See *Quarterman v. Lee*, 291 Ga. App. 603, 603-604 (662 SE2d 234) (2008) ("The burden is on the party alleging error to show it affirmatively by the record.") (citation and punctuation omitted).

2. The mother also argues that the juvenile court erred by failing to include the father's supplemental self-employment income in its child support calculation. The father testified at the hearing that his gross income from his primary employment as a plumber the prior year was $100,700.71, and that he also earned around $7,500 for "side jobs." However, in calculating the father's gross income, the juvenile court

8

considered only his income from his primary employment. We agree with the mother that this was error.

In calculating child support under Georgia law, the trial court's first step is to determine each parent's monthly gross income. *Jackson v. Sanders*, 333 Ga. App. 544, 548 (2) (773 SE2d 835) (2015). Gross income is "all income from any source, whether earned or unearned, including . . . income from self-employment." Id. See OCGA § 19-6-15 (f) (1) (A) (iii). Adherence to the statutory provisions is mandatory, and the trial court's failure to consider a proven source of parental income constitutes error. See *Nelson v. McKenzie*, 364 Ga. App. 533, 534-535 (1) (875 SE2d 515) (2022). Accordingly, we reverse the juvenile court's finding regarding the father's gross income, and we remand for a recalculation of child support. See id.

3. Next, the mother argues that the juvenile court erred by ordering her to pay 75 percent of the children's uncovered medical expenses. We disagree.

Under Georgia law, a child's uninsured healthcare expenses "shall be the financial responsibility of both parents" and shall be divided between the parents "pro rata, unless otherwise specifically ordered by the court." OCGA § 19-6-15 (h) (3) (A). See also OCGA § 19-6-15 (b) (10). Thus, the trial court is "authorized to allocate the

[children's] uninsured healthcare expenses at a ratio other than the parties' pro rata share of the child support obligation[.]" *Galvin v. Galvin*, 288 Ga. 125, 127 (4) (702 SE2d 155) (2010). We review the trial court's allocation decision for abuse of discretion. See *Simmons v. Simmons*, 288 Ga. 670, 673 (4) (706 SE2d 456) (2011) (finding no abuse of discretion in the trial court's allocation of the entire cost of the child's uncovered medical expenses to the father).

At the hearing in this case, the mother testified that one of the children "has a lot of different medical needs" requiring frequent appointments with specialists, and there was evidence that another child was receiving counseling. The father expressed skepticism about the necessity of some of the children's medical expenses. As noted, the juvenile court had individual interviews with the children, during which the court might have inquired about their healthcare needs. In the absence of a transcript of these interviews, and in view of the father's testimony that some of the medical expenses may have been unwarranted, we cannot say that the juvenile court abused its discretion in its allocation decision.

4. Finally, the mother contends that the juvenile court erred by suspending her visitation with B. D. and A. D. until further order of the court. Again, we disagree.

As noted, after the mother filed her motion for new trial, the father filed an emergency motion to suspend the mother's visitation on the ground that she had beaten B. D. The juvenile court entered an ex parte order suspending visitation, then held a hearing on all pending motions. At the hearing, counsel for the father sought to present evidence about the mother's recent abuse of B. D. The mother's lawyer requested a continuance to subpoena her own witnesses. The mother's lawyer then told the juvenile court:

> So . . . whatever you want to put in place between now and when the case can be continued for you to do what you feel like you need to do for the children to be protected, I am not prepared to go fully forward, and I don't think it is in the children's best interest, the parties' best interest to go forward[.]

The court responded:

> I will grant your continuance, . . . but during the said continuance all three children will be with [the father] and [the mother] will have no visitation. None. She will be restrained and enjoined from going to the school. She will have no contact with said children during pendency. You understand?

The mother's lawyer said, "I understand," without objecting to these conditions, and the court later entered a written order granting the mother's oral motion for continuance.

Thus, the mother invited the suspension of her visitation by seeking a continuance and advising the juvenile court to do "whatever you want . . . for the children to be protected." Again, a party cannot complain of error that the party itself induced. See *Mary Allen Realty & Mgmt.*, 354 Ga. App. at 862 (1). To the extent the mother complains that the case has been stayed pending her appeal, that issue becomes moot with the rendering of this decision.

*Judgment affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. Dillard, P. J., and Brown, J., concur.*