**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**July 8, 2013**

# In the Court of Appeals of Georgia

A13A0389, A13A0390. DONOHOE v. DONOHOE.

MILLER, Judge.

In these companion appeals, Michele Donohoe (the "mother") appeals the trial court's order denying her petition to modify custody of her two children and granting Jeffrey Donohoe's (the "father") petition to modify visitation. The mother contends that the trial court erred in considering matters not in the record; concluding that, as a matter of law, a custodial parent has a prima facie right to maintain custody in a modification proceeding;, and denying her petition for modification of custody. The mother also contends that the trial court abused its discretion in granting the father's petition to restrict the mother's visitation. We reverse and remand because the trial court's judgment was based upon an erroneous view of the law and consideration of matters outside of the record.

We will affirm a trial court's decision on a petition to change custody if there is any reasonable evidence in the record to support it. See *Mitcham v. Spry*, 300 Ga. App. 386, 386-387 (685 SE2d 374) (2009). "When reviewing a child custody decision, this [C]ourt views the evidence presented in the light most favorable to upholding the trial court's order." (Footnote omitted.) Id. at 386.

So viewed, the evidence shows that the parties had two children. J. D. was born in December 2001, and S. D. was born in August 2004. The parties divorced in 2009, with the father being awarded physical custody of the children and the parties sharing joint legal custody. The parenting plan incorporated into the judgment set forth the mother's visitation rights. The parenting plan also required that the father and mother consult with each other regarding all major decisions relating to the children, and that, if the parties were unable to agree after "serious and meaningful" discussions, the father would have final decision-making authority.

In 2010, the father filed a petition for modification of custody to obtain sole custody of the children and to modify the mother's visitation, alleging that the mother had spoken to the children about legal issues in the case, made numerous trips to the children's school in violation of the visitation schedule, and engaged in conduct that disrupted the children's schedule and activities. Thereafter, the mother filed a petition

to modify custody and visitation, alleging that the father failed to consult with her about decisions relating to the children, the father interfered with her visitation schedule, and the father would not allow the children to spend any more time with her than the minimum provided under the parenting plan.

In February 2011, J.D. reported to his teacher that his father had grabbed his arm, slapped him, and punched him in the forehead. The incident was reported to the Department of Family and Children Services ("DFACS"). Following an investigation, DFACS closed the case when it found a lack of evidence to substantiate the claims of abuse. Later that year, in December 2011, J.D. told a counselor at school that his father had physically abused him. The incident was reported to DFACS, and DFACS dismissed the complaint.

The mother subsequently amended her petition for modification of custody and visitation to add claims that the father had physically abused J.D. and that S.D. had witnessed the abuse. The mother then filed a motion for subpoena of the DFACS records concerning J.D.'s reports that his father abused him. The mother filed the motion under OCGA § 49-5-41 (a) (2), asking the trial court to review the records to determine if the records were necessary to resolve any issues before the court and, if

so, to release those records to the parties. The trial court did not rule on the mother's motion.

At trial, there was no mention of the DFACS records, nor were they admitted into evidence. Additionally, no DFACS representative testified regarding the agency's investigations into reports of abuse made against the father. Rather, through a school official, the parties elicited testimony that J.D. made two reports in 2011 that his father had physically abused him, DFACS was notified, and DFACS decided not to take action against the father.

Other evidence presented at the trial showed that while in the custody of their father, the children were excelling academically. J.D. was a straight A-student and achieved excellent marks on standardized tests. S.D. performed above her grade level and was placed in the gifted program at her school. The children also participated in numerous activities. S.D. played soccer, J.D. played baseball, and both took martial arts classes and piano lessons. While J.D. had exhibited some behavioral issues at school, these issues were resolved when J.D. received counseling at school. Numerous witnesses testified that the father was very attentive to the children's needs, he had a great relationship with his children, and they had never seen him yell at or become physically abusive with his children.

Following the hearing, the trial court ordered that all provisions of the judgment of divorce remain intact with the exception that the mother's visitation rights were restricted. Consequently, the trial court denied the mother's petition for modification of custody and visitation, denied the father's petition for modification of custody, and granted the father's petition for modification of the mother's visitation. In its order, the trial court noted that it had reviewed the DFACS records in camera. In a supplemental order, the trial court further noted that it had used the information gleaned from those DFACS reports in reaching its verdict. The trial court stated, however, that it did not release the DFACS records to the parties because neither party requested that they be admitted into evidence or be included in the trial court's record, and neither party moved to preclude the trial court from considering these records.

1. The mother contends that the trial court erred because it misapplied the law in evaluating a petition for modification of custody and it considered matters not included in the record when reaching its verdict. We agree.

> A petition to change child custody should be granted only if the trial court finds that there has been a material change of condition affecting the welfare of the child since the last custody award. If there has been such a change, then the court should base its new custody decision on the best interest of the child.

(Punctuation omitted.) *Viskup v. Viskup*, 291 Ga. 103, 105 (2) (727 SE2d 97) (2012). "A trial court's decision regarding a change in custody/visitation will be upheld on appeal unless it is shown that the court clearly abused its discretion." (Citation and punctuation omitted.) *Vines v. Vines*, 292 Ga. 550, 552 (2) (739 SE2d 374) (2013). An abuse of discretion occurs where a ruling "is unsupported by any evidence of record or where that ruling misstates or misapplies the relevant law." *Mathis v. BellSouth Telecommunications*, 301 Ga. App. 881 (690 SE2d 210) (2010); see also *Watson v. Elberton–Elbert County Hosp. Auth.*, 229 Ga. 26, 27 (1) (189 SE2d 66) (1972) (a ruling of the trial court which is within the court's discretion will be reversed where it "is based upon an erroneous view of the law").

Here, the trial court erred in several respects. The trial court erred when it relied upon language from *Ormandy v. Odom*, 217 Ga. App. 780 (459 SE2d 439) (1955) in setting forth its authority to modify custody. Citing *Ormandy*, supra, 217 Ga. App. at 780-781 (1), the trial court stated that

> [i]n a contest between the parents, the award of custody by a divorce court vests the custodial parent with a prima facie right. Ordinarily, the trial court should favor the parent having such a right. What the court must affirmatively find is either that the original custodian is no longer able or suited to retain custody or that conditions surrounding the child have so changed that modification of the original judgment would have the effect of promoting his welfare. It is a change for the worse in the

6

conditions of the child's present home environment rather than any purported change for the better in the environment of the non-custodial parent that the law contemplates under this theory. Although trial courts have wide discretion in change of custody proceedings, there are limits to that discretion.

In *Bodne v. Bodne*, 277 Ga. 445, 447 (588 SE2d 728) (2003), the Supreme Court of Georgia abolished the rule set forth in *Ormandy* that a custodial parent has a prima facie right to retain custody. Moreover, "when *Bodne* overruled [*Ormandy*] and abolished the prima facie right of the custodial parent, it follow[ed] that it also eliminated the requirement of showing a change for the worse." (Punctuation omitted.) *Weickert v. Weickert*, 268 Ga. App. 624, 627 (1) (602 SE2d 337) (2004). To be clear, a trial court is authorized to modify custody where the evidence shows a change in material conditions that have a positive effect on the child's welfare, as well as changes that adversely affect the child. See *Lynch v. Horton*, 302 Ga. App. 597, 601 (4) (692 SE2d 34) (2010). Consequently, to the extent the trial court relied upon *Ormandy*, it erred.

The trial court also erred in considering matters outside of the record. The trial court expressly stated that it considered matters not included in the record in reaching its verdict. The DFACS records were never entered into evidence and no one from DFACS testified. Consequently, the trial court erred in relying upon the DFACS

7

records in reaching its verdict. See *In re D.W.*, 294 Ga. App. 89, 94 (3) (a) (668 SE2d 533) (2008) (trial court erred in referring to contents of psychological evaluation not included in the record); *Scott v. State*, 270 Ga. App. 292, 295 (2) (606 SE2d 312) (2004) (trial court improperly considered matters outside the record).

Moreover, the trial court erred in not addressing the mother's request for the DFACS records. The mother's motion under OCGA § 49-5-41 (a) (2) specifically requested that the trial court provide such records if it believed the records were necessary to resolve any issues before the court. Under OCGA § 49-5-41 (a) (2), a person "*shall* have reasonable access" to DFACS records if a court determines that access to such records may be necessary for determination of an issue before such court. Although the trial court considered the DFACS records in reaching its verdict, it declined to provide access to those records, erroneously believing that the parties had to request that the records be admitted into evidence or be included in the record. The plain language of the statute clearly required the trial court to provide the confidential records when it determined that the records were to be considered in resolving the issues before it.

Since the trial court's judgment was based upon erroneous views of the law and its improper consideration of matters outside of the record, the trial court's judgment is reversed and remanded for further proceedings consistent with this opinion.

2. In light of our holding in Division 1, we need not address the mother's other enumerations of error.

*Judgment reversed and remanded. Barnes, P.J., concurs. Ray, J., concurs in judgment only.*