**SECOND DIVISION**
**RICKMAN, C. J.,**
**MILLER, P. J., PIPKIN, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 23, 2023**

# In the Court of Appeals of Georgia

A22A1385. IN THE INTEREST OF M. J. H., a child.

MILLER, Presiding Judge.

In this private dependency petition, the DeKalb County juvenile court ruled that it was in the best interest of M. J. H., a child currently residing in Georgia with his uncle, to be reunited with his mother in Guatemala but awarded temporary custody to his uncle. The custodian of M. J. H. now appeals from the juvenile court's Final Order of Adjudication and Disposition, contending that the juvenile court relied on evidence not in the record to make its factual findings and that it failed to consider evidence in the record of the danger and educational harm of returning to Guatemala. We agree that the juvenile court improperly considered facts not in the record, and we therefore vacate the juvenile court's order and remand the case for further proceedings.

"On appeal from an order finding a child to be a dependent child, we review the juvenile court's finding of dependency in the light most favorable to the lower court's judgment to determine whether any rational trier of fact could have found by clear and convincing evidence that the child is dependent." (Punctuation and citation omitted.) *In the Interest of M. C.*, 365 Ga. App. 398, 399 (878 SE2d 625) (2022).

So viewed, the record shows that M. J. H. was born in Guatemala on January 28, 2004.[1] When he came to the United States in 2016, he was apprehended by Border Patrol officials and released to the care of his uncle, Daniel Hernandez-Romero. Since then, M. J. H. has lived with his uncle and has attended school in DeKalb County. He wishes to remain in the United States and complete high school.

Hernandez-Romero filed a petition requesting a finding of dependency for M. J. H. under OCGA § 15-11-2 (22) so that he could obtain legal custody over M. J. H. As part of the petition, Hernandez-Romero requested that the juvenile court make two additional conclusions of law which would enable M. J. H. to petition the United

---

[1] We note that this case has not become moot by M. J. H. turning 18 years old during the pendency of this appeal because the juvenile court's ruling creates adverse consequences relating to M. J. H.'s immigration status that will continue to affect him beyond childhood. See *In the Interest of J. R. P.*, 287 Ga. App. 621, 623 (1) (652 SE2d 206) (2007) (an appeal is not moot when a ruling creates collateral consequences that will continue to affect the complaining party).

States Citizenship and Immigration Services for Special Immigrant Juvenile ("SIJ") status and, if approved for SIJ status, for lawful permanent residence status. In support of his petition, Hernandez-Romero submitted a sworn affidavit from M. J. H.'s mother stating that she admits the allegations contained in the dependency petition and consents to custody of M. J. H. being granted to Hernandez-Romero. He also submitted the US Department of State's Guatemala 2020 Crime & Safety Report, which advises that "Guatemala remains among the most dangerous countries in the world" due to "[e]ndemic poverty, an abundance of weapons, a legacy of societal conflict, and the presence of organized criminal gangs."

At the juvenile court's hearing on the petition, M. J. H. testified that when he lived in Guatemala, he lived with his mother and his grandparents. He attended school until he was nine or ten years old, then he stopped going to school so he could earn money for his family. He came to the United States when he was twelve years old because, although he was working very hard, it was not sufficient to support his family and because he wanted to continue his education. M. J. H. confirmed that there are gangs in his community in Guatemala, and he testified that he is afraid to return because he wants to finish his education. M. J. H.'s mother still lives with her parents, M. J. H.'s grandparents, in Guatemala, and M. J. H. and his uncle send money to

3

them. Hernandez-Romero testified that M. J. H. is a good kid who makes good grades in school and that he wants M. J. H. to remain in his care. Hernandez-Romero further testified he works as a painter and has been able to provide food, clothing, and medical care for M. J. H. M. J. H.'s guardian ad litem ("GAL") testified that she had visited the child and his uncle at their home and had confirmed M. J. H.'s enrollment in high school. M. J. H. had told the GAL that he has a good relationship with his mother. He had also told the GAL that if he went back to Guatemala, he would fear for his life and be scared that he would not be able to complete school because he would need to support his mother financially. The GAL recommended that M. J. H. be allowed to remain in Georgia with Hernandez-Romero as his legal guardian. She believed that this would be in the child's best interest because he did not receive proper education when he lived with his mother, his mother was unable to provide for his basic needs, and he was scared to return to Guatemala due to the gangs and his mother's inability to protect him from those gangs.

The juvenile court found that M. J. H. was a dependent minor child and appointed Hernandez-Romero as the child's custodian. However, the juvenile court also found that reunification with the child's mother was viable and that it was in M. J. H.'s best interest to return to Guatemala. In support of these conclusions, the

juvenile court noted that M. J. H. remains in contact with his family in Guatemala and specifically found that, although M. J. H.'s uncle has more financial resources, his family in Guatemala can nonetheless provide proper and adequate care for him. The court further concluded, in its written order: "While the child has expressed concerns regarding the presence of gangs in his community, it is the unfortunate reality that gangs are present in this county where he now resides." This appeal followed.

On appeal from the Final Order,[2] Hernandez-Romero contends the juvenile court erred in concluding that it was in M. J. H.'s best interest to return to Guatemala and that reunification with his mother is viable. Specifically, Hernandez-Romero contends that the juvenile court erroneously considered matters outside the record, failed to consider documentary evidence establishing the danger of returning M. J. H. to Guatemala, and failed to consider the educational consequences of returning M. J. H. to Guatemala. We agree that the trial court considered facts outside the record, and we conclude that this error requires the court's order to be vacated and the case remanded.

---

[2] Hernandez-Romero filed a motion for reconsideration of the Final Order, but the trial court did not rule on that motion before he filed the notice of appeal.

As a threshold matter, we emphasize that Georgia's juvenile code must "be liberally construed to reflect that the paramount child welfare policy of this state is to determine and ensure the best interests of its children" and that

> [i]n every proceeding, [the juvenile code] seeks to guarantee due process of law, as required by the Constitutions of the United States and the State of Georgia, through which every child and his or her parent and all other interested parties are assured fair hearings at which legal rights are recognized and enforced.

OCGA § 15-11-1. Georgia's dependency proceedings seek "[t]o ensure that the health, safety, and best interests of a child [are] the paramount concern[.]" OCGA § 15-11-100 (4).

As this Court recognized in *In the Interest of J. J. X. C.*, 318 Ga. App. 420 (734 SE2d 120) (2012):

> Federal law provides a path to lawful permanent residency in the United States to resident alien children who qualify for "special immigrant juvenile" (SIJ) status. 8 USC § 1101 (a) (27) (J); 8 CFR § 204.11. Congress created SIJ classification to protect abused, neglected, and abandoned immigrant youth through a process allowing them to become legal permanent residents.

> To be eligible to petition the federal government for SIJ status, the resident alien must be under age 21 and unmarried. 8 CFR § 204.11 (c).

6

The child must have been declared dependent upon a state juvenile court. 8 USC § 1101 (a) (27) (J). And the juvenile court must have made two additional findings: (1) that "reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law"; and (2) that "it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence." Id. at (i), (ii). See also 8 CFR § 204.11. Although the juvenile court determines whether the evidence supports the findings, the final decision regarding SIJ status rests with the federal government[.] 8 USC § 1101 (a) (27) (J) (iii).

(Citations and punctuation omitted). Id. at 424.

In various contexts, we have routinely found error where the trial court based its findings and conclusions on facts that do not appear in the record. See *Rodgers v. Rodgers*, 358 Ga. App. 223, 229 (2) (854 SE2d 558) (2021) (in child custody case, trial court erred by considering a safety plan that was not in evidence); *Donohoe v. Donohoe*, 323 Ga. App. 473, 477 (1) (746 SE2d 185) (2013) (physical precedent only) (in child custody case, trial court erred by relying on DFACS records that were not entered into evidence in reaching its verdict); *In the Interest of D. W.*, 294 Ga. App. 89, 94 (3) (a) (668 SE2d 533) (2008) (in termination of parental rights case, juvenile court erred by referring to the contents of a psychological evaluation that was

7

not entered into evidence). Here, the juvenile court's order clearly reflects that the court relied on facts outside the record to arrive at its conclusions that it is in M. J. H.'s best interest to return to Guatemala and that reunification with his mother is viable. As noted above, the record establishes that gangs have a significant presence in Guatemala and that their presence makes M. J. H. fearful of returning to Guatemala. The juvenile court resolved this concern by observing that there are gangs in M. J. H.'s community in the United States as well, but there is nothing in the record to support the court's observation. Importantly, there is no evidence in the record establishing that gangs or crime in M. J. H.'s community in the United States has had any effect on him or his family, nor that gangs are as widespread in this community as they are in Guatemala. And because the presence of crime and gangs was a central issue in this case, this error was not harmless. See *Rodgers*, supra, 358 Ga. App. at 229 (2) (because trial court's ruling on custody and visitation, specifically its finding that unsupervised visitation was prohibited by a safety plan that was not in evidence, the error was harmful).

Accordingly, we vacate the juvenile court's Final Order and remand the case for further proceedings.[3] See id.

*Judgment vacated and case remanded. Rickman, C. J., and Pipkin, J., concur.*

---

[3] This opinion should not be read to express any view on whether M. J. H. is entitled to the SIJ findings.