**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**June 25, 2024**

# In the Court of Appeals of Georgia

A24A0269. FINCH v. WALDEN.

GOBEIL, Judge.

This is the third appearance of this matter before this Court. See *In the Interest of S. W.*, 363 Ga. App. 666 (872 SE2d 316) (2022) ("*Finch I*"); *Finch v. Walden*, 368 Ga. App. 46 (889 SE2d 144) (2023) ("*Finch II*"). In the current appeal, Chelsea Finch appeals from the trial court's temporary order awarding custody of the parties' minor child, S. W., to Justin Walden, granting supervised visitation to Finch, and denying Finch's claim for habeas corpus to have S. W. returned to her. On appeal, Finch asserts: (1) denial of due process for issuing the latest order without an additional hearing and for punishing her for appealing the previous order; (2) error in the merits

of the change-of-custody order; and (3) error in the merits of denying the habeas claim. For the reasons set forth below, we affirm the trial court's order.

Here, the record shows that Finch and Walden shared custody of S. W. by virtue of an Order of Legitimation entered in October 2014, in which the parties shared legal custody and Finch was the child's primary physical custodian. Walden "had visitation according to a set schedule."

As described in *Finch II*, the factual and procedural background of this case is summarized as follows.

> In May 2019, the Department of Family and Children Services ("DFCS") received a report regarding the death of S. W.'s two-year-old sibling.[1] DFCS then took S. W. into its custody and placed her in Walden's care. DFCS filed a dependency petition and a complaint requesting that Walden have primary physical custody of S. W., alleging that S. W. was deprived due to inadequate supervision and "unexplained child injuries." In a series of orders, the juvenile court found that S. W. was dependent, and it gave Walden sole primary custody of S. W. On appeal, we vacated the juvenile court's orders for failing to make findings

---

[1] Finch's boyfriend, Michael Sconyers, was later found guilty of murdering S. W.'s sibling, and he was sentenced to life imprisonment.

of fact and conclusions of law and for failing to provide reasons for the court's disposition as required in dependency proceedings. [2]

Following remand, Walden filed a complaint for change of custody in Columbia County Superior Court, seeking child support and sole legal and physical custody of S. W. Specifically, Walden contended that there were numerous domestic incidents at Finch's home prior to the death of S. W.'s sibling and that Finch continues to have a romantic relationship with Sconyers despite his conviction for the murder of S. W.'s sibling. Finch answered the complaint and asserted a counterclaim for habeas corpus relief, arguing that the court had to return S. W. to her custody because the juvenile court's orders had been vacated on appeal and that there was no legal basis for Walden to continue to have custody of S. W.

At the conclusion of the hearing [3] but prior to its ruling, the trial court asked the parties if there was any other evidence to be presented. Finch's counsel orally requested that the court make findings of fact and conclusions of law in entering its order. . . . After the hearing, the trial court entered a temporary order granting Walden sole legal and physical

---

[2] See *Finch I*, 363 Ga. App. at 673-675 (4). While this case was pending on appeal, the juvenile court issued a Final Disposition Order in the dependency action, finding that, by stipulation of the parties, there was no present dependency of S. W., and closing the dependency case.

[3] Other facts established at the temporary hearing are discussed below. The transcript of the hearing was transmitted to this Court in *Finch II*. In our discretion, we will consider the record in Case No. A23A0486 in connection with the instant appeal.

custody of S. W. and granting Finch supervised visitation in accordance with a parenting plan ["the August 2022 order"]. The trial court declined to enter findings of fact and conclusions of law because its order was temporary and therefore fell outside of the ambit of OCGA § 19-9-3.

368 Ga. App. at 47 (footnote omitted).

Finch appealed the August 2022 order. In *Finch II*, 368 Ga. App. at 49-50 (1) (b), because the trial court failed to make findings of fact and conclusions of law despite Finch's counsel requesting them, we vacated the trial court's judgment and remanded the case "with direction that the court make sufficient findings and conclusions to support its rulings on the contested child custody matter at issue in this case." Id. at 50 (1) (b) (citation and punctuation omitted). We did not reach the merits of any other issue raised by Finch on appeal, including whether the trial court erred in denying the Finch's habeas corpus claim. See id. at 50 (2).

Following the case's remand, without holding an additional hearing, the trial court issued a "revised temporary order" ("the July 2023 order"). This order found that "[b]etween 2015 and 2019, . . . there were four occasions when law enforcement authorities were called to [Finch's] home:" (A) two family violence incidents with a man with whom Finch was in a relationship (the father of Finch's other child),

including an incident where S. W. witnessed violence against Finch; (B) the incident where Finch's other child (S. W.'s half-sibling) was murdered; and (C) an incident where S. W. was found walking alone down a "5 lane . . . heavily travelled" road. The trial court also found that, at the time of the hearing, Finch was residing with her mother, and there was testimony suggesting that "acts of family violence have occurred" in the home, "perpetrated by someone who continues to reside in that home," though no one had been convicted of any crimes related to these incidents.

The court considered the factors set forth in OCGA § 19-9-3 and the unusual procedural posture of the case, given that Finch had been largely kept away from S. W. as a result of juvenile court orders that were later vacated. The court recognized that, as a result of the procedural posture, Finch "had no face-to-face interaction with the child for four years," almost half the child's life at that time, and the court found that fact to be relevant to what was in the child's best interests, even though it was not due to any wrongdoing by Finch. The court found that S. W. was "thriving while under [Walden's] primary care," while the child had been subject to witnessing family violence and had escaped the home while in Finch's care. The court considered as relevant that Finch had continued to live with the man who murdered her other child

5

while he was out on bond, and "continues to be in some sort of relationship with that man even while he is in prison."[4]

The court found that several factors set forth in OCGA § 19-9-3 favored Walden receiving custody of S. W.: (a) (3) (G) continuity in the child's life and the length of time in which she has lived in a stable, satisfactory environment with Walden; (a) (3) (F) the home environment of each parent; (a) (3) (J) each parent's involvement in the child's activities; and (a) (3) (M) each parent's past performance and relative abilities of future performance of parenting responsibilities. Thus, the court found a material change in circumstances since the last standing custody order, and it was in S. W.'s best interest for her primary custodian to be her father, Walden. The court then concluded that it was in the child's best interest to have limited, supervised visitation with her mother, such visitation expanding over time assuming that it does not negatively impact the child. The court also issued a parenting plan outlining the ordered visitation. This appeal followed.

---

[4] The court noted that Finch testified at Sconyers's jury trial that she believed her child's death was an accident, and that Finch and Sconyers did not co-habitate with S. W. in the home after his arrest (because the juvenile court had removed S. W. from Finch's home).

1. On appeal, Finch first contends that the trial court erred in entering the July 2023 order, which further restricted Finch's visitation with S. W. from the August 2022 order, without hearing any additional evidence. She asserts that the additional restrictions are in violation of her right to due process and punitive because she chose to appeal the August 2022 order. She argues that the trial court's "vindictiveness" should be presumed because "a more severe sentence" was imposed on her after remand, and there were no affirmative reasons for the increased restrictions mentioned in the July 2023 order.

Finch is correct that her visitation conditions were different in the August 2022 order and the July 2023 order. In the August 2022 order, Finch was granted supervised visitation every other weekend, 12 p.m. to 6 p.m., on both Saturday and Sunday. The visitation was to be supervised by any adult mutually agreeable to the parties, or in the absence of agreement, Ms. Theresa Lamb. Finch was responsible for the cost of the supervision In the July 2023 order, Finch was granted supervised visitation every other weekend, 10 a.m. to 3 p.m., on both Saturday and Sunday. The visitation was to be supervised by an adult mutually agreeable to the parties, or "a person approved to act as a guardian ad litem in this Circuit who agrees to supervise

the visitation for an agreed-upon sum of compensation."[5] Finch was responsible for the cost of the supervision. No visitation could occur outside the general geographic area unless mutually agreed between the parties in advance.

However, all of the cases relied upon by Finch in support of this argument are criminal cases that involve successful challenges to convictions or sentences and a more severe sentence after remand. Of course, parties are entitled to due process in a child custody proceeding, but generally due process is satisfied when a party is given the right of notice and the opportunity to be heard. *Coppedge v. Coppedge*, 298 Ga. 494, 500 (4) (783 SE2d 94) (2016) (citation and punctuation omitted). Here, the order being challenged was based on findings and conclusions stemming from a hearing at which Finch was present, was represented by counsel, and gave evidence and argument. The July 2023 order does not refer to any incidents or circumstances that occurred after remand. Indeed, in the contested order, the trial court explained that it referenced notes taken during the hearing and reviewed the transcript in preparing

---

[5] Finch contends specifically (without citation to the record or evidence) that disallowing Ms. Lamb from supervising the visitation (after Walden refused to agree to her as a mutually agreeable supervisor), and requiring payment to a guardian ad litem, has "been particularly taxing, and has effectively frustrated [her] ability to maximize visitation periods."

the July 2023 order. Further, "the requirements of due process are flexible and call for such procedural protections as the particular situation demands." Id. (citation and punctuation omitted). Finch has failed to point to any authority imposing upon a trial court a due process obligation to conduct an additional hearing under these circumstances. The difference between the visitation restrictions in the two orders is minimal, and although it may have an outsized effect on Finch's ability to maintain visitation, we find no evidence that the restrictions were imposed to achieve such an effect. To the extent any vindictiveness is to be presumed because the trial court did not affirmatively acknowledge the alterations in the parenting plans, this presumption appears only in reference to criminal defendants whose sentences are increased after appeal, and even in that context, it is a limited principle of law. See *State v. Hudson*, 293 Ga. 656, 659-661 (748 SE2d 910) (2013) (examining the presumption of vindictiveness established in *North Carolina v. Pearce*, 395 U. S. 711 (89 SCt 2072, 23 LE2d 656) (1969), and limiting its application); *Sponsler v. Sponsler*, 353 Ga. App. 627, 631 (2) (838 SE2d 921) (2020) (examining the *Pearce* presumption in the context of a criminal contempt proceeding). A child custody order is not a criminal sentence or punishment for criminal contempt, and we decline to extend such principle here —

9

to a civil party whose visitation conditions were modified after remand from a successful appeal.

2. Finch next contests several of the trial court's factual findings, and its legal authority to change custody of S. W. from her to Walden in the absence of a material change in conditions and circumstances substantially affecting the interest and welfare of the child. We find no error and affirm.

When reviewing an order in a child custody case, this Court views the evidence in the light most favorable to the trial court's decision. *Strickland v. Strickland*, 298 Ga. 630, 633 (1) (783 SE2d 606) (2016). This Court will not set aside the trial court's factual findings if there is any evidence to support them, and we defer to the trial court's credibility determinations. *Saravia v. Mendoza*, 303 Ga. App. 758, 758 (695 SE2d 47) (2010). We, however, review the legal conclusions the trial court draws from the facts de novo. Id.; *Mashburn v. Mashburn*, 353 Ga. App. 31, 32 (836 SE2d 131) (2019). "A trial court's decision regarding a change in custody/visitation will be upheld on appeal unless it is shown that the court clearly abused its discretion. An abuse of discretion occurs where a ruling is unsupported by any evidence of record or where that ruling misstates or misapplies the relevant law." *Donohoe v. Donohoe*, 323

Ga. App. 473, 476 (1) (746 SE2d 185) (2013) (citations and punctuation omitted) (physical precedent only).

(a) Finch contests four specific factual findings as stated in the trial court's order as not supported by evidence in the record of the parties' custody case.[6] However, as discussed below, the trial court's ruling in this case was supported by ample evidence. Even setting aside the factual findings contested by Finch, there remains sufficient evidence to support the trial court's conclusions in this case.

(b) Finch asserts that there was insufficient evidence supporting the trial court's judgment changing primary physical custody to Walden. She asserts that the primary reason given for the change in circumstances warranting a modification of custody — her lack of contact with the child over the previous four years — did not

---

[6] Specifically, the factual findings refuted by Finch are: (1) that S. W. was found walking alone down a 5-lane, busy, part of a roadway (Finch contends the evidence showed only that the child was found on that particular road, with no evidence that the portion of the road where she was found was a 5-lane or busy portion of the road); (2) that Finch continued to reside with Sconyers while he was out on bond awaiting his trial for murder (Finch contends the evidence showed only that he occasionally stayed over with her, but they did not live together during this time); (3) facts from Sconyers's trial that are not in the record of this custody case (the trial judge for the custody case was the same trial judge who presided over the murder trial); and (4) that the juvenile court took into account Finch's involvement with Sconyers when it issued orders restricting her custody of S. W. (Finch contends that the superior court judge cannot know the rationale behind the juvenile court judge's orders).

11

support the judgment because it was through no fault of her own, and punished her for complying with court orders that were later vacated. She also challenges the trial court's reliance on her personal relationships with Sconyers and others in its determination as violating her "freedom of personal choice in matters of family life." For the reasons that follow, we disagree.

> A trial court is authorized to modify a custody award upon a showing of new and material changes in the conditions and circumstances substantially affecting the interest and welfare of the child. The proof must show both a change in conditions and an adverse effect on the child or children.

*Moses v. King*, 281 Ga. App. 687, 690 (1) (637 SE2d 97) (2006) (citation, punctuation, and emphasis omitted) (physical precedent only). If the trial court finds that there has been a material change of conditions, it is authorized to modify custody if it is in the best interest of the child. *Bodne v. Bodne*, 277 Ga. 445, 446 (588 SE2d 728) (2003).

Here, evidence presented at the hearing showed that several important events had occurred since the last standing custody order (the 2014 legitimation order granting primary custody to Finch). Specifically, S. W. had witnessed family violence against Finch in Finch's home; S. W.'s half-sibling was killed in Finch's home while

12

under the care of Finch's fiancé at-the-time, Sconyers; and there was an incident where S. W. escaped from Finch's home unsupervised, was found on the side of a roadway, and had to be returned by the police. This evidence is sufficient to show both that there had been a material change in circumstances and an adverse effect on the child. See *Todd v. Casciano*, 256 Ga. App. 631, 633-637 (1) (569 SE2d 566) (2002) (evidence was sufficient to support change in custody where children were subject to spending nights in a chaotic and unsafe home with mother's romantic partner; trial court allowed to draw reasonable inferences about adverse effect on children from the evidence). Further, there was evidence that S. W. had thrived after being placed in the custody of her father and that her behavior had improved since leaving Finch's home. See *Lynch v. Horton*, 302 Ga. App. 597, 601 (4) (692 SE2d 34) (2010) (changes in circumstance which have a positive effect on child also sufficient to warrant change in custody). Thus, the trial court's findings are supported by evidence.

Further, evidence also supports the trial court's findings that it was in S. W.'s best interest to change custody to Walden. While the trial court observed that both parents loved S. W., it named four statutory factors that led to its conclusion that it was in S. W.'s best interest to grant primary custody to Walden. OCGA § 19-9-3 (a)

13

(3) (G), the importance of continuity in the child's life, and (J), each parent's involvement, or lack thereof, in the child's educational, social, and extracurricular activities, weighed in Walden's favor because S. W. had been living in Walden's home for four years, and had had limited face time with Finch during that time. Thus, maintaining continuity would suggest she would benefit from remaining with her father (and as a result of her living with Walden, he was the only parent that had been involved in her schooling and extracurricular activities). Further, the court pointed to OCGA § 19-9-3 (a) (3) (F), the home environment of each parent considering the promotion of nurturance and safety of the child rather than superficial or material factors, and (M), each parent's past performance and relative abilities for future performance of parenting responsibilities. These factors also weighed in Walden's favor because S. W. had been subject to witnessing family violence in Finch's home, and was allowed to escape from the home, while there was no such evidence of difficulties under her father's supervision. An analysis of the evidence shows that there was ample support for the trial court's decision to change custody to Walden. See *Milner v. Milner*, 181 Ga. App. 760, 761-763 (1), (2) (353 SE2d 628) (1987) (evidence supported change in custody where mother was romantically involved with

a man who had engaged in acts of family violence against a former partner and had been accused of violence against children, and the child at issue was routinely unsupervised by mother, including one incident where the child left the home and was almost struck by a vehicle) (physical precedent only).

We disagree with Finch's arguments that the trial court's "primary reason" for changing custody was her lack of interaction with the child for the last several years (while Finch was respecting an order from the juvenile court that was later vacated) and that the trial court was not permitted to take such fact into consideration. As described above, the trial court noted several reasons for its decision, listing none as a primary reason. To the contrary, most of the court's factual findings concerned Finch's tumultuous history of living in homes where violence has occurred and her continued relationship with the man who was convicted of killing her other child, rather than focusing on any lack of relationship between S. W. and Finch. Further, the court was careful to find that Finch was not at fault for any lack of interaction between Finch and the child, and noted that fault was not necessarily relevant to its OCGA § 19-9-3 analysis. And, Finch provides no legal support for her argument that the trial court may not consider facts for which a party is not at fault when determining the

best interests of the child. The statute includes no such assignment of blame, and the trial court appears to have considered Finch's lack of blame in its assessment. To the contrary, as in all child custody cases, the "welfare of the child is the paramount issue for consideration by the trial court[.]" *Adams v. Adams*, 219 Ga. 633, 635 (135 SE2d 428) (1964). In this case, the trial court correctly focused on how the procedural posture of the case affected S. W.'s best interests, rather than basing its decision on attempting to rectify any wrongs done to Finch via the vacated orders. Here, we do not find that the trial court abused its discretion in this order.

3. Finally, Finch challenges the trial court's denial of her counterclaim for habeas corpus relief. She contends that, as soon as the juvenile court's custody order was vacated by this Court in 2022, custody of S. W. should have reverted back to her based on the last valid custody order, the 2014 Order of Legitimation. Thus, Walden was withholding custody of S. W. in violation of this order. She argues that, under the habeas corpus action, custody of S. W. could be transferred only if Finch had "lost the right to custody through one of the ways recognized in OCGA §§ 19-7-1 and 19-7-4, or through unfitness."

Under OCGA § 9-14-1 (b), "[a]ny person alleging that another person in whom for any cause he is interested is kept illegally from the custody of the applicant may seek a writ of habeas corpus to inquire into the legality of the restraint." "When a parent withholds a child from the other parent in violation of a valid child custody order, the other parent may seek to secure the return of the child by filing a habeas corpus petition in the judicial circuit where the child is allegedly being detained illegally." *Bales v. Lowery*, 299 Ga. 200, 202 (2) (787 SE2d 166) (2016).

Here, Finch is correct that, had the trial court conducted a hearing on the habeas corpus claim first, it would have considered only whether Finch had a prima facie right to custody of S. W. and whether Finch was unfit to parent the child or had lost her right to custody via OCGA §§ 19-7-1 (b) (1) (generally voluntarily giving up custody) or 19-7-4 (generally severe neglect). See *Bales*, 299 Ga. at 202 (2); *Davis v. Taylor*, ___ Ga. App. ___, ___ (2) (a) (898 SE2d 574) (2024) (explaining the difference between the standards in a habeas-corpus action and change-in-custody action). However, we find no support for the argument that a trial court cannot consider a change in custody at the same time as a habeas corpus petition. Walden could not have brought his change of custody complaint as a counterclaim to Finch's habeas corpus

17

petition. *Bales*, 299 Ga. at 202 (2); OCGA § 19-9-23 (b) (1). But here, Walden's complaint for custody was brought first, so the questions of whether there had been a material change in circumstances affecting the child since the time of the last valid custody order and what was in the best interests of the child were properly before the trial court, and its order denying Finch's habeas corpus petition was not in error.

Accordingly, we affirm the trial court's order.

*Judgment affirmed. Barnes, P. J., and Pipkin, J., concur.*